Filed 8/30/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DEMOND FINLEY, | |
| Petitioner, | |
| v. | A167311 |
| THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, | (San Francisco City & County Super. Ct. No. 22006989) |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Demond Finley was charged with several firearm possession crimes after police discovered a handgun during a search of his car. Finley filed a motion under the California Racial Justice Act of 2020 (Stats. 2020, ch. 317, § 1) (the Racial Justice Act) claiming that police stopped and searched his car because he is Black. The trial court denied Finley's motion for failure to state a prima facie violation of the Racial Justice Act. Because the trial court's review of Finley's motion went beyond the confines of determining whether it stated a prima facie case, we will grant Finley's petition for writ of mandate and direct the trial court to rehear the motion.

1

# BACKGROUND

The People charged Finley, who is Black, with possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1), count 1), being a convicted person carrying a loaded firearm (Pen. Code, § 25850, subd. (a), count 2), being a convicted person having a concealed firearm in a vehicle (Pen. Code, § 25400, subd. (a)(1), count 3), and being a person on probation prohibited or restricted from possessing a firearm (Pen. Code, § 29815, subd. (a), count 4).[1]

At the preliminary hearing, Officer Terrell Gunn, a San Francisco police officer, testified that he observed a blue Buick parked on the 600 block of Minna Street in San Francisco. According to Officer Gunn, the area is a known high-crime area. Officer Gunn ran a license plate check of the vehicle, which came back as belonging to an Acura, not a Buick. Officer Gunn turned on the lights of his police vehicle, and Finley stepped out of the vehicle with his wife. Officer Gunn told Finley to go back into the vehicle. Finley told Officer Gunn that he and his wife had purchased the vehicle a couple of weeks prior. Finley provided title and registration information, which showed the car was not stolen. After obtaining Finley's driver's license, Officer Gunn ran another query and learned that Finley was on federal probation with a search clause. Officer Gunn then searched the vehicle.

---

[1] All further undesignated statutory references are to the Penal Code.

From the rear passenger seat, he retrieved a backpack which contained a loaded handgun without a serial number.

At the conclusion of the preliminary hearing, the trial court denied Finley's motion to suppress after concluding that Officer Gunn's probation search was lawful. The trial court held Finley on counts 1 through 3, but discharged count 4 for lack of evidence The People filed an information charging counts 1 through 3.

Finley then filed a motion alleging a violation of the Racial Justice Act. He claimed that police showed racial bias or animus toward him when they stopped and searched his vehicle in violation of section 745, subdivision (a)(1).[2] Finley cited a combination of factors to support his motion: (1) Officer Gunn ran Finley's license plates for "no apparent logical non-racial reason"; (2) Officer's Gunn's justification that petitioner was present in a high-crime area is "a notorious reference to neighborhoods with a high concentration of Black people, or other people of color"; (3) Officer Gunn ran a driver's license check on Finley despite confirming that the vehicle was not stolen; (4) police officer body-worn cameras show that a police sergeant on the scene told other officers that he did not want to discuss the circumstances of the incident on camera; (5) Officer Gunn originally stated in a police report that he found Finley's work identification card in the same compartment of the backpack as

---

[2] Finley also claimed in his motion that the prosecution "engaged in racially disparate charging" in violation of section 745, subdivision (a)(3), but he has not pursued this argument on appeal.

3

the gun during his search, but admitted at the preliminary hearing that he found petitioner's identification later at the police station; and (6) reports and studies show that Black people in San Francisco are far more likely to be stopped by police than other groups.

As evidentiary support for his petition, Finley relied on Officer Gunn's testimony from the preliminary hearing, recordings from two body-worn cameras during the incident, and statistics purportedly showing that Black people are more likely to be stopped by police than White people. Finley also included a declaration from Dante King, who petitioner represented is an expert on policing and anti-racism. Among other things, King opined: "In my opinion, the use of the term 'high-crime neighborhood' by Officer Gunn, first in his [police report] and then in his testimony [at the preliminary hearing], demonstrates bias against people of color."[3]

The People opposed Finley's motion and argued that Finley did not adequately assert a prima facie violation of the Racial Justice Act. The People offered evidence showing that the area where police engaged Finley was, in fact, a high-crime area, and noted that the Supreme Court has long stated that an area's reputation for criminal activity is an appropriate consideration in

---

[3] In his motion, Finley also made a request for discovery relating to "charging rates on pretext stops" after the current District Attorney assumed her position. Finley admitted at the hearing on his motion that the request was an "afterthought" and a "throwaway line at the end of the brief." Finley has not raised discovery as an issue our court should address.

4

determining the reasonableness of an investigative detention. The People also asserted that it is "common practice" in a law enforcement traffic stop for an officer to run a query of a person's name, as Officer Gunn did here with Finley. The People also argued that the comments of other officer's on the body-worn cameras do not demonstrate a substantial likelihood that Officer Gunn stopped Finley and searched his car because of Finley's race.

The trial court concluded that Finley did not establish a prima facie violation of the Racial Justice Act and denied his motion. The court explained at the hearing: "When I think about whether or not you made a prima facie case, I get to take into account the totality of the all the circumstances that are here. There is evidence that this is a high-crime area. There is evidence that they find stolen vehicles here. There is evidence that he [Officer Gunn] did not know the occupants of the vehicle were African American until he approached the vehicle. [¶] From this, the Court finds that a prima facie case has not been made and that Officer Gunn gave non-race specific reasons as to why he was patrolling this area and why he ran the plate as he did." The court elaborated: "The officer treated them with respect the whole time, as he is doing it, and he checked the license—I mean, the registration first and found out that it wasn't—it wasn't the right vehicle. Then he asked for the license plate, and it came back. And I understand it's on body-worn camera footage, and we expect them to be courteous. But I have seen when they are not courteous, and I have seen when they are trying to hide things or

5

maybe going outside what they should be allowed to do. That is one of the cases that I think we need to see for an [Racial Justice Act] violation. The fact that to say that any time they stop someone, run a plate in a high-crime area, that is more or less saying every time that happens there should be a [Racial Justice Act] hearing, and that's definitely not the standard – that standard is not met in the circumstances of this case."

Petitioner challenged the trial court's ruling by filing a petition for writ of mandate in our court. We asked for preliminary briefing and then issued an order to show case. We also accepted an amicus curiae brief filed by the Office of the State Public Defender.

## DISCUSSION

Finley challenges the trial court's ruling that he failed to make a prima facie showing of a Racial Justice Act violation. Finley argues the trial court improperly weighed evidence in concluding that he did not make a prima facie case. Finley contends that under the correct standard, in which a court accepts the truth of the facts proffered by a defendant, he made a prima facie showing of a violation. The People, represented by the San Francisco District Attorney, respond that the trial court applied the correct legal standard and properly determined that Finley did not establish a prima facie violation.

### *Racial Justice Act – Statutory Overview*

The Racial Justice Act states that "[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin."

6

(Pen. Code, § 745, subd. (a).) "The [Racial Justice] Act sets forth four categories of conduct, any of which, if proved, is enough to 'establish' a violation of section 745, subdivision (a)." (*Young v. Superior Court* (2022) 79 Cal.App.5th 138, 147 (*Young*).) As noted, only one of those categories is at issue in this case—whether "[t]he judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (§ 745, subd. (a)(1).)[4]

In *Young*, *supra*, we explained how the Racial Justice Act operates: "Procedurally, the Act authorizes defendants to seek relief for a violation of section 745, subdivision (a), prior to imposition of judgment, by 'motion . . . in the trial court.' (§ 745, subd. (c).) If such a motion is brought, the court shall, upon a showing of a prima facie violation of section 745, subdivision (a), hold a hearing at which 'evidence may be presented by either party, including, but not limited to, statistical evidence, aggregate data, expert testimony, and the sworn testimony of witnesses'; the court may appoint an independent expert; and the defendant shall bear the burden of proof of a violation of section 745, subdivision (a) by a preponderance of the evidence. (§ 745, subd. (c).) At the conclusion of the hearing, 'the court shall make

---

[4] The other three categories concern the conduct during trial of the judge, attorneys, law enforcement officers involved in the case, expert witnesses, and jurors (§ 745, subd. (a)(2); whether the defendant was charged with or convicted of a more serious offense than defendants of other races who engaged in similar conduct (§ 745, subd. (a)(3)); and the length of the sentence imposed by the trial court (§ 745, subd. (a)(4)).

findings on the record.' (§ 745, subd. (c)(3).) And if a violation of section 745, subdivision (a) is proved, 'the court shall impose a remedy specific to the violation found from the following list' (§ 745, subd. (e)): declaration of a mistrial, discharge of the jury and empanelment of a new jury; or dismissal of enhancements, special circumstance allegations, or other special allegations; or reduction of one or more charges. (§ 745, subd. (e)(1)(A)–(C).) Claimed violations of section 745, subdivision (a) may also be raised postjudgment, by petition for habeas corpus under section 1473, subdivision (f) or by motion to vacate an allegedly invalid conviction or sentence under section 1473.7. The Act authorizes a set of remedies specific to postjudgment requests for relief. (§ 745, subd. (e)(2)(A)–(B).)" (*Young*, *supra*, 79 Cal.App.5th at p. 148.)

As relevant here, the Racial Justice Act states that the trial court "shall hold a hearing" if "the defendant makes a prima facie showing of a violation," (§ 745, subd. (c)), and specifically defines the term "prima facie showing": " 'Prima facie showing' means that the defendant produces facts that, if true, establish that there is a substantial likelihood that a violation of [the Racial Justice Act] occurred." (§ 745, subd. (h)(2).) Under the Racial Justice Act, "a 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not." (*Ibid.*)

### *Analysis*

To our knowledge, no published decision has addressed the prima facie standard under the Racial Justice Act. But we have

8

much from which to draw, as the concept of a prima facie case is common in both criminal and civil contexts. (E.g., *People v. Duvall* (1995) 9 Cal.4th 464, 474–475 [habeas petitioner must allege prima facie case for relief]; *People v. Lewis* (2021) 11 Cal.5th 952, 962 [defendant seeking to vacate murder conviction based on natural and probable consequences theory must assert prima facie case for relief]; *People v. Tuggles* (2009) 179 Cal.App.4th 339, 380 [defendant claiming juror misconduct must make prima facie showing]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [party moving for summary judgment bears initial burden of production to make a prima facie showing of nonexistence of triable issue of material fact].)

The defining feature of the prima facie standard is that it creates an initial burden on a moving party to proffer evidence that would support a favorable ruling without a court's consideration of conflicting evidence put forth by the opponent. " 'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' " (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 111.) " 'Prima facie evidence is that which will support a ruling in favor of its proponent if no controverting evidence is presented. [Citations.] It may be slight evidence which creates a reasonable inference of fact sought to be established but need not eliminate all contrary inferences.' " (*People v. Zamora* (2022) 73 Cal. App.5th 1084, 1091.)

We agree with Finley that we may initially look to the prima facie standard applicable to a petition for writ of habeas

9

corpus, just as the Supreme Court has done in other contexts. (E.g. *People v. Lewis*, *supra*, 11 Cal.5th at p. 971 [applying the "the analogous prima facie inquiry in habeas corpus proceedings" to petition to vacate murder sentence].)  In habeas corpus cases, "a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred."  (*People v. Romero* (1994) 8 Cal.4th 728, 737; see also Rules of Court, rule 4.551(c)(1) [at prima facie stage of habeas proceeding, "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved"].)  To establish a prima facie showing for habeas relief, a petitioner "should both (i) state fully and with particularity the facts on which relief is sought [citations] as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." (*People v. Duvall, supra,* 9 Cal.4th at p. 474.)  " 'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' " (*Ibid.*)  Importantly, a court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing, unless the court's own records "contain facts refuting the allegations made in the petition." (*In re Serrano* (1995) 10 Cal.4th 447, 456; see also *In re Lawley* (2008) 42 Cal.4th 1231, 1241 ["The central

10

reason for referring a habeas corpus claim for an evidentiary hearing is to obtain credibility determinations"]; accord *People v. Johnson* (2015) 242 Cal.App.4th 1155, 1163 ["Normally . . . a 'prima facie showing' connotes an evidentiary showing that is made without regard to credibility . . . . [¶] This is particularly true when [as here] the prima facie showing merely triggers an evidentiary hearing, at which any necessary credibility determinations can still be made."].)

Although we agree that the type of information a defendant should present at the prima facie stage of a Racial Justice Act case is similar to the information a defendant should present in a habeas petition, the standard by which a court assesses the information is somewhat different. In a habeas proceeding, "the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them." (*People v. Duvall, supra*, 9 Cal.4th at p. 474.) The standard is not as stringent in a Racial Justice Act case. Under the Racial Justice Act, the court does not ask if the defendant proffered facts sufficient to demonstrate actual entitlement to relief. Rather, the court asks if a defendant has proffered facts sufficient to show a "substantial likelihood"–defined as "more than a mere possibility, but less than a standard of more likely than not"–that the Racial Justice Act has been violated. (§ 745, subd. (h)(2).) The prima facie threshold is thus lower than the preponderance of the evidence standard required to establish an actual violation of the Racial Justice Act. (§ 745, subd. (a).)

11

Furthermore, imposing a "heavy burden" at the prima facie stage in a Racial Justice Act case would be contrary to the Act's structure and purpose. By enacting the Racial Justice Act, the Legislature intended "to depart from the discriminatory purpose paradigm in federal equal protection law," a standard that was " 'nearly impossible to establish.' " (*Young*, *supra*, 79 Cal.App.5th at pp. 149–150.) The Legislature also imposed "escalating burdens of proof" within the statutory scheme, with a lower standard of proof at the prima facie stage ("substantial likelihood") than at an evidentiary hearing ("preponderance of the evidence"). (*Id.* at p. 160.) The Legislature could not have intended to place a "heavy burden" on a defendant at the prima facie stage of a Racial Justice Act case.

The principles that apply to a defendant's prima facie showing extend to expert declarations and statistical information that accompany a motion under the Racial Justice Act; a court should not accept the truth of this evidence if it is "conclusory" and "made without any explanation." (*Duvall*, *supra*, 9 Cal.4th at p. 474.) In this regard, the court serves a "gatekeeping role" to exclude expert opinions and statistics that are speculative or unsupported, similar to the role a court serves during trial and other evidence-based proceedings when a party presents expert evidence. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 753 (*Sargon*); see *People v. Azcona* (2020) 58 Cal.App.5th 504, 513 [describing trial court's gatekeeping role during criminal trial].) The court's gatekeeping function aligns with its assessment of whether a defendant has

made a prima facie showing for relief, as "[t]he trial court's gatekeeping role does not involve choosing between competing expert opinions." (*Sargon, supra*, 55 Cal.4th at p. 772.) Rather, the focus " 'must be solely on principles and methodology, not on the conclusions that they generate.' " (*Ibid.*)

To summarize, a defendant seeking relief under the Racial Justice Act must state fully and with particularity the facts on which relief is sought, and include copies of reasonably available documentary evidence supporting the claim. The court should accept the truth of the defendant's allegations, including expert evidence and statistics, unless the allegations are conclusory, unsupported by the evidence presented in support of the claim, or demonstrably contradicted by the court's own records.[5] (See *People v. Harden* (2022) 81 Cal.App.5th 45, 56 [defendant did not make prima facie showing for resentencing under new felony murder rule when "record of conviction irrefutably establishes as a matter of law that the jury determined [the defendant] was the actual killer"].) And again, the court should not make credibility determinations at the prima facie stage.

In this case, while we commend the trial court for its thoughtful consideration of Finley's motion, we must conclude that the court applied an incorrect standard of review at the prima facie stage. The court's statements during the hearing on

---

[5] For example, the record could irrefutably establish the falsity of a defendant's allegations if the defendant alleges a prosecutor used racially discriminatory language in front of the jury (§ 745, subd. (a)(2)), but a transcript of the trial shows the prosecutor used no such language.

Finley's motion demonstrate that it weighed all the evidence presented during the earlier preliminary hearing—both favorable and unfavorable to Finley's motion—rather than focusing on and accepting as true the evidence that supported Finley.

As was the case here, a motion under the Racial Justice Act will often cite testimony and other evidence from the preliminary hearing. But a court's role at a preliminary hearing is different than its role at the prima facie stage of a motion under the Racial Justice Act. At a preliminary hearing, "the magistrate may weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses." (*Johnson v. Superior Court* (1975) 15 Cal.3d 248, 252.) At the prima facie stage of a Racial Justice Act motion, by contrast, the trial court must consider whether the motion and its supporting evidence state facts that, "*if true*, establish that there is a substantial likelihood that a violation" occurred (§ 745, subd. (h)(2), italics added), and should not weigh the evidence or make credibility determinations, except in the rare case where the record "irrefutably establishes" that a defendant's allegations are false. (*People v. Harden, supra,* 81 Cal.App.5th at p. 56.)

The trial court here strayed from the prima facie standard in at least two instances during the motion hearing. First, the court explained that "[t]here is evidence that [Officer Gunn] did not know the occupants of the vehicle were African American until he approached the vehicle." While this is true based on Officer Gunn's testimony at the preliminary hearing, Finley argued there was other evidence demonstrating that Officer

14

Gunn could see inside the vehicle before approaching it, including body-worn camera footage of the stop showing it was easy to see inside the vehicle through the windows. At the prima facie stage, the trial court should have focused on the accuracy and significance of Finley's proffered facts, rather than weighing his evidence against Officer Gunn's contrary preliminary hearing testimony. (*People v. Romero*, *supra*, 8 Cal.4th at p. 737.)

Second, in denying Finley's motion, the court observed, "[t]here is evidence that this is a high-crime area" when referring to the area where Finley's car was stopped and searched. That evidence was not proffered by Finley as part of his prima facie case, but was based on Officer Gunn's testimony at the preliminary hearing, or possibly by statistical evidence presented by the People in opposition to Finley's motion. Once again, the focus should have been on the facts Finley asserted in his motion, not contrary evidence. (*People v. Romero*, *supra*, 8 Cal.4th at p. 737.) Relatedly, the court did not address the expert declaration Finley submitted with his motion, including the expert's opinion that "the use of the term 'high-crime neighborhood' by Officer Gunn, first in his [police report] and then in his testimony [at the preliminary hearing], demonstrates bias against people of color." The court should have reviewed the opinion to determine if it was conclusory, speculative, or unsupported. (*Sargon*, *supra*, 55 Cal.4th at p. 753.) If the court determined the opinion passed this preliminary threshold, it was required to accept the truth of the opinion at this stage and consider it as part of Finley's prima facie case.

The People argue that the trial court "afforded the conclusory statements in the [expert] declaration little weight because they were unrelated to the facts here and unsupported by [Finley's] proffered evidence." The People also point to the significance of "high-crime area" locations in Fourth Amendment jurisprudence (see *People v. Souza* (1994) 9 Cal.4th 224, 240 [area's reputation for criminal activity is an appropriate consideration in assessing reasonableness of detention]), and claim that the data they presented about the crime rate in this case disprove the expert's opinion. We are not persuaded. There is no indication the trial court rejected the expert declaration because it was conclusory, irrelevant, or unsupported by evidence. Instead, the court's statements during the hearing indicate that it considered the declaration but disregarded it in favor of other evidence that supported the People's position. Notably, the court stated with regard to the declaration, "I think that everyone would agree that a lot of the things in this declaration are true." But in its ruling, the court did not address the declaration, and instead accepted evidence that the area was, in fact, a high-crime area without addressing the expert's opinion regarding the meaning and significance of the phrase "high-crime area." As we have repeated, the focus at this stage of the Racial Justice Act proceedings should have been on the allegations and supporting evidence proffered by Finley, not evidence supporting the People's argument.

The People also provide race-neutral explanations for the other facts Finley proffered with his motion, such as Officer

Gunn's misstatement about when he located Finley's identification in the backpack, and the police sergeant's comment that the search should be discussed off camera. At the prima facie stage, Finley " 'need not eliminate all contrary inferences' " for the facts he presented. (*People v. Zamora, supra*, 73 Cal.App.5th at p. 1091.) The People's explanations would be more appropriately considered at an evidentiary hearing if, upon remand, the trial court concludes that Finley has satisfied his burden of making a prima facie showing. (§ 745, subd. (c) ["If a motion is filed in the trial court and the defendant makes a prima facie showing of a violation of subdivision (a), the trial court shall hold a hearing."].)

Because the trial court did not apply the correct legal standard at the prima facie stage, we will direct the court to conduct a new hearing to determine whether Finley has asserted a prima facie violation of the Racial Justice Act. (See *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 824 ["Because the standard we announce is new, the proper course is to remand to the trial court for application of the . . . test formulated above to the facts of this case."].) We express no opinion as to whether Finley has made a prima facie case of a violation. As alluded to above, if the trial court determines Finley has made a prima facie showing, the court must conduct an evidentiary hearing where it may consider evidence and arguments submitted by the People, make credibility determinations, and weigh the evidence.

## DISPOSITION

Let a peremptory writ of mandate issue commanding respondent superior court to vacate its January 6, 2023 order denying Finley's motion under the Racial Justice Act, and to hold a new hearing to determine whether Finley has established a prima facie violation of the Racial Justice Act.

BROWN, P. J.

WE CONCUR:

STREETER, J.
GOLDMAN, J.

*Finley v. Superior Court* (A167311)

18

Trial Court:        San Francisco City & County Superior Court

Trial Judge:        Hon. Eric Fleming

Counsel:        Manohar Raju, San Francisco City & County Public Defender, Matt Gonzalez, Ilona Yañez, Sylvia Nguyen, San Francisco City & County Deputy Public Defenders, for Petitioner.

Mary K. McComb, State Public Defender, Lisa M. Romo, Catherine White, Deputy State Public Defenders, as Amicus Curiae on behalf of Petitioner.

Brooke Jenkins, San Francisco City & County District Attorney, Maria Shih, Natalie Fuchs, Nicholas J. Hunt, San Francisco City & County Deputy District Attorneys, for Respondent.